ALTUNA *v.* ORTIZ ET AL.

## APPEAL from the District Court of Guayama.

No. 30.—Decided May 20, 1907.

MORTGAGE—EXECUTION—FORECLOSURE PROCEEDINGS NULL AND VOID.—Creditors having their rights recorded prior to the passage of the Mortgage Law could choose either the summary proceedings established by said law or the foreclosure proceeding provided for by the Law of Civil Procedure for the recovery of their credits, and a proceeding prosecuted under the latter system having been commenced and the trial having been prosecuted under the procedure provided for thereby, and an application having subsequently been filed asking for the annulment of such proceedings, the questions involved therein must be heard and determined in accordance with the provisions of that law.

ID.—WANT OF EXECUTORY FORCE OF TITLE BY REASON OF EXTRINSIC DEFECTS—In accordance with the old Law of Procedure, the annulment of executory proceedings might be demanded, among other cases, when the title did not possess executory force by reason of extrinsic defects, but these defects must be understood to be external or defects of form in the title itself; but in no case can it be taken to mean defects which only affect the capacity of a party to demand execution, and which in no wise affects the validity of the executory title.

ID.—FAILURE TO CITE DEBTOR.—The annulment of the executory proceeding could also be demanded under the old Law of Procedure when the debtor had not been cited to attend the auction sale, but such citation is valid and effective when in treating of the private property of one spouse in which the conjugal partnership has no interest, the citation or notice is served upon the owner of the property without the intervention of the other spouse, in accordance with the provisions of sections 160 and 161 of the Civil Code.

ID.—CAPACITY OF EXECUTION CREDITOR.—Where the capacity of the execution creditor is shown by a certificate of the transactions consummated for the

division of the property by the predecessor in interest, the fact that the death certificate is not included in such certificate can not affect the efficacy thereof, because after it has been judicially approved it must be presumed that this point was proved, and that all the legal formalities were complied with.

ID.—PRESCRIPTION—EFFECT THEREOF.—Whatever may be the defects in a certificate of partition recorded in the registry of property in respect to the award of property rights, so long as such record exists it will be legally effective even to the prejudice of a third party.

ID.—RECOVERY OF INTEREST—THIRD PARTY.—The provisions of article 114 of the Mortgage Law must be deemed to be applicable to cases wherein a third party has subsequently acquired some real right in the mortgaged property, because where there is no third party whose interests might be prejudiced, the creditor may recover all interest due and unpaid up to the total liquidation of the principal debt.

ID.—PRESCRIPTION—MORTGAGE ACTIONS.—The prescription of which section 1867 of the Civil Code speaks refers only to certain personal actions and not to those arising out of mortgage contracts which continue in force for 20 years (section 1865), which term of duration must be understood to extend not only to the recovery of the principal debt, but also to the interest which may be demanded in the same mortgage action.

APPEAL—EVIDENCE—ADMISSION OF EVIDENCE WITHOUT OBJECTION ON THE PART OF ADVERSE PARTY.—Where a party has consented to the admission of evidence without objection or protest, he cannot subsequently attack it on appeal.

The facts are stated in the opinion.

*Mr. Manuel F. Rossy* for appellant.

*Mr. Bernardini* for respondent.

MR. CHIEF JUSTICE QUIÑONES delivered the opinion of the court.

By public instrument executed in Guayama on September 7, 1891, before Notary José Mariano Capó y Alvarez, Vicente Fernández Monjardin, a landowner and resident of that locality, acknowledged that he was indebted to Luis Ardura y Berdasco, a resident of the same place, in the sum of 17,000 *pesos,* in money current on the date of said instrument, which Ardura had loaned him, agreeing to repay said sum on August 31, 1899, with interest at the rate of 9 per cent per annum payable annually at the end of each year; and as security for payment he mortgaged an estate belonging to him situated in the *barrio* of Jájome Alto, in the municipal district of Cayey, having an area of 1,255 *cuerdas* for the 17,000 *pesos* constituting the principal debt, 3,000 *pesos* for the two annual

instalments of interest agreed upon, and for 600 *pesos* more for costs in the event of judicial proceedings. This deed was recorded in the registry of property of Guayama on December 20, 1892.

Upon the death of the creditor, Luis Arduro y Berdasco, in the city of Oviedo, Spain, and upon the partition of his property being made, the mortgage credit referred to was awarded to the widow, Amalia Altuna y Vega, in part payment of her *gananciales,* who had it recorded in her favor in the Registry of Property of Guayama, upon the presentation of a certified copy of the deed of partition executed on January 29, 1894, by said widow and her children as the heirs of deceased father, Luis Ardura.

On April 22, 1904, Amalia Altuna y Vega, through her attorney, Tomás Bernardini de la Huerta, brought the execution proceedings, the subject of this litigation, in the former District Court of Humacao under whose jurisdiction Guayama was at the time, and under the procedure of the former Law of Civil Procedure against Belén Ortiz, the widow of Fernández, and her daughter, Belén Fernández y Ortiz, as the sole and universal heirs of Vicente Fernández Monjardin, who had also died. After setting forth in her complaint the antecedents stated above and attaching thereto a copy of the deed constituting the mortgage credit involved and a copy of the partition of the property of the estate of the decedent, Luis Ardura y Berdasco, containing a memorandum that it had been recorded in the Registry of Property of Guayama, she prayed that the debtors be compelled to pay the amounts claimed, and upon their failure to do so, that sufficient property belonging to them should be attached to cover the claims, and that in due time a judgment of sale be rendered and that they be adjudged to pay the same, and that the execution proceedings be prosecuted until the property attached shall have been sold and the creditors paid in full from the proceeds thereof the amounts claimed in the complaint and the costs of the action.

Belén Ortiz de Fernández and Belén Fernández y Ortiz, having been summoned to show cause why the sale should not take place, contested the execution proceedings, alleging in support of their contentions the nullity of the execution of their property or otherwise, that the judgment of sale should not have been rendered, and if this contention were not sustained and the execution proceedings were ordered prosecuted, that they be limited to the amount stated in the mortgage deed for interest and costs, or at least that it be held that only the last five years' unpaid interest could be collected, with the costs against the execution creditor.

The proceedings having been transferred to the District Court of Guayama under the provisions of the law of March 10, 1904, reorganizing the judiciary of this Island, and having been prosecuted according to the procedure prescribed in the new Code of Civil Procedure, the trial was held and the evidence was heard; whereupon the District Court of Guayama rendered judgment on December 13, 1905, sustaining the complaint and ordering that the plaintiff, Amalia Altuna y Vega, obtain and recover from the defendants, Belén Ortiz, the widow of Fernández, and Belén Fernández y Ortiz, the sum of $9,690, plus $6,849 as interest accrued since August 31, 1895, to the date the complaint was filed, all according to the mortgage deed executed by Vicente Fernández Monjardin in favor of Luis Ardura, plus interest accruing after the complaint was filed at the stipulated rate of 9 per cent per annum, in addition to the costs, all of which was to be paid in United States currency; and for the satisfaction of this judgment that execution issue against the property of the defendants, without prejudice to the rights which the Mortgage Law recognizes in favor of the first mortgage creditor of the estate encumbered.

Counsel for the defendants, Belén Ortiz de Fernández and Belén Fernández y Ortiz, took an appeal from this judgment; and the proper transcript of the record having been transmitted to this Supreme Court and the appellants having filed

their brief, a day was set for the hearing which was had with the attendance of counsel for both parties.

In his brief, counsel for the appellants substantially renewed the same allegations which he formulated in the lower court in his answer to the complaint: That the proceedings be annulled, or otherwise that it be held that a judgment of sale should not be rendered, or if the latter cannot be granted and if it should be ordered that the execution proceedings continue their course, that such execution be held to include only the amounts mentioned in the mortgage deed for interest and costs, or at the utmost, interest for the preceding five years as yet unpaid, with the costs against the execution creditor.

We will speak of all these conclusions submitted to this court for decision by counsel for the appellants in the order in which they have been formulated.

The first—that is to say, the annulment of the execution proceedings—is based on the alleged ground that the title presented by Amalia Altuna was not one on which execution could be had, because as she exercised in her complaint the character of the assignee of the mortgage credit of her deceased husband, Luis Ardura, by virtue of the award which had been made to her in the deed of partition of said credit, as was proper, on account of it having been executed in a foreign country, as Spain was on the date when said deed was produced in court—that is to say, in April, 1904—and she did not establish the death of said Ardura by means of the proper certificate of death, nor did she present an authentic copy of his will, all of which documents formed an integral part of the title importing a confession of judgment, it was evident that the execution could not issue on the latter and consequently that the execution levied against the debtor estate was null from the beginning, in accordance with article 1465 of the former Law of Civil Procedure—in force on the date when the execution issued, and according to which the annulment of the execution proceedings could be requested, among

other cases, "when the title should not be one importing a confession of judgment, either on account of external defects or because it is not yet due, or because it is not actionable, or the amount is not a specific sum."

But we do not agree with this allegation of the learned counsel for the appellants.

We agree with him that Amalia Altuna having filed a complaint on April 22, 1904, when the former Law of Civil Procedure was still in force, as partly amended by General Order No. 118, and having chosen the procedure established in said law for execution proceedings in preference to the summary procedure prescribed by the new Mortgage Law of this Island for the recovery of credits of that character, availing herself of the rights granted her to do so by article 175 of the Regulations of the same law, which provides that creditors having their rights recorded prior to the new Mortgage Law, could select between the summary proceedings established by said law or follow the old execution proceedings, and that as Amalia Altuna, whose mortgage credit had originated and had been recorded long before the date upon which the Mortgage Law went into effect in this Island, was included in this case, it is evident that as the execution creditor had chosen the execution proceeding established by the former Law of Civil Procedure in force when the complaint was filed, and the proceedings having followed the course prescribed by law to and including the answer to the complaint, in which answer was raised the question of the nullity of the proceedings and other questions proposed in due time, which have been discussed and decided by the judge of the lower court, it is clear, we repeat, that in order to decide these questions in the appeal pending we must refer to the former Law of Procedure, because if we were to follow the new Code of Civil Procedure in the decision of these questions we would give the latter a retroactive effect, which it does not have.

We therefore agree with counsel for the appellant that all the questions raised in these execution proceedings must

be decided in accordance with the provisions of the former
Law of Civil Procedure and not in accordance with the mod-
ern Code which had not gone into effect when all these ques-
tions were raised and when the legal problem which is to be
decided in these proceedings was established.

Now then, is the execution levied against the property of
the estate of Vicente Monjardin in these proceedings really
void, in accordance with the former law? We think not.

According to article 1465 of the former Law of Procedure,
cited by counsel for the appellant in support of his allegation,
the nullity of the execution proceedings among other cases,
could be requested, as has been said, when the title should
not be one importing a confession of judgment, either on
account of external defects or because it has not yet matured,
or because it is not actionable or the amount is not a specific
sum.

In this case the executory force of the title presented is
not contested on account of intrinsic defects, or defects affect-
ing the obligation in its substance, upon which point nothing is
alleged; but on account of extrinsic defects or defects of form,
the defendants considering as such the failure to present the
will and the certificate of the death of the creditor, Luis Ar-
dura, and the absence of authentication of the deed of parti-
tion presented by the execution creditor, Amalia Altuna y
Vega, to establish that the mortgage credit of her deceased
husband had been lawfully conveyed to her.

But we believe that counsel for the appellant construed
this article erroneously and consequently gives it an improper
application.

This article, in providing in its second subdivision that
the annulment of the proceedings could be requested when
the title did not import a confession of judgment on account
of external defects, refers solely to defects of form in said
title, as, for example, if the title consisted of a public instru-
ment, if it were not a first copy, or, if it were a second copy,
if it had not been issued under a judicial order and after the

citation of the person to be prejudiced thereby, or of his principal, as required by article 1427 in enumerating the titles which import a confession of judgment, and the requisites they should contain. It was to these external defects in the title that article 1465 of the former Law of Procedure referred in providing in its second subdivision that the nullity of the proceedings could be requested when the title did not have executory force owing to external defects; but it in no wise referred to the defects which the appellants allege are contained in the title presented by Amalia Altuna, as they affect only the capacity of said lady to request the execution as the assignee of the mortgage credit of her deceased husband, which can in no wise be confused with the external defects of the title referred to in the second subdivision of the article cited of the former Law of Procedure. In this case the title importing a confession of judgment consists of the mortgage deed executed by Vicente Fernández Monjardin in favor of Luis Ardura y Berdasco in Guayama on September 7, 1891, and no objection has been made to this deed, nor could any defect be alleged either in its intrinsic part, because the obligation it contains was perfectly valid and permitted execution, because said obligation had matured and represented a specific sum in money exceeding 1,000 *pesetas;* nor could it be alleged in its external or extrinsic part because the deed presented was a first copy, issued by the notary who had authenticated it, and it had been recorded in the proper registry of property, as shown by the decision placed at the end of said deed. Had these defects existed they could have been alleged as grounds for a petition for the annulment of the proceedings on account of external defects in the title, depriving it of the force of a document importing a confession of judgment. But nothing of this kind has been alleged in this case, and consequently the annulment sought cannot be declared on the grounds that if such defects did exist they would only affect the capacity of the execution creditor and in no way the

validity of the title importing a confession of judgment presented.

This with respect to the first ground for annulment alleged by counsel for the appellants.

With regard to the second ground for annulment also alleged, consisting in that the husband of Belén Fernández y Ortiz, one of the defendants, had not been cited, it must also be rejected. Article 1465 of the former Law of Procedure, of which we have already spoken a number of times, provided in the third subdivision thereof that the annulment of the execution proceedings could also be requested when the debtor had not been cited for the sale, which process was equivalent to citation and summons to make answer to the complaint, with the formalities provided by said law; but this provision is also applied by counsel for the appellants in this case with manifest error.

Section 160 of the new Civil Code, which had already been in force for two years when Belén Fernández was summoned to show cause why the sale in these execution proceedings should not take place, confers upon each of the parties to a marriage the free disposition and administration of his or her own property, and the article following it authorizes a married woman to contract in her own right and to appear in court in all cases referring to the defense of her own rights or property; and as in these execution proceedings Belén Fernández y Ortiz defends her own rights and property, acquired by inheritance from her deceased father, Vicente Fernández Monjardin, and with which neither her husband nor the conjugal partnership had anything to do, the summons to show cause why the sale should not take place served exclusively upon Belén Fernández y Ortiz, without the intervention of her husband, was a perfectly valid and efficient act and should produce valid effects in these proceedings.

The exception to the capacity of the execution creditor, Amalia Altuna, which is also subsidiarily alleged, in the event of the nullity of the execution proceedings not being declared,

on the ground that she had failed to establish the transfer to
her of the mortgage credit of her deceased husband by authen-
tic documents, cannot be sustained either.

In the first place, because Amalia Altuna has presented
for the purpose of establishing her capacity—that is to say,
the character in which she appears in court as the assignee of
the mortgage credit in question—a certified copy of the divi-
sion and partition of the estate of her deceased husband, Luis
Ardura, approved after the citation and hearing of all the
persons interested in said testamentary proceedings by the
Judge of First Instance of the city of Oviedo, Spain, and filed
in the protocol in the office of Secundio de la Torre y Ortiz,
on January 29, 1894. This certified copy embodies, as set
forth in the judgment of the trial court, the will of Luis
Ardura; and although it is not stated that the certificate of
death of said Ardura is also included therein, it is to be as-
sumed that his death was duly established, because, without
this requisite, the judge could not have approved the testa-
mentary division and partition, and if he did approve them
it is to be assumed that all the formalities of law in such cases
provided had been complied with.

This in the first place. In the second place, whatever may
be the defects contained in the copy presented, it is a fact that
it was recorded in the registry of property with respect to
the conveyance of the mortgage credit in question to Amalia
Altuna, as shown by the certificate of the registrar of prop-
erty of that judicial district, which is of record, and which
record, as long as it continues in force and is not held to be
void by the courts of justice in the proper ordinary action,
secures to her the ownership of the mortgage credit referred
to, even to the prejudice of third persons, in accordance with
articles 23, 24 and 25 of the Mortgage Law in force in this
Island; and in the third and last place, as this deed was
admitted in evidence at the trial, without any exception or
protest whatsoever by the defendants, now the appellants, the
latter cannot make any objection thereto on this appeal as

they consented to its admission, and because they are estopped by their own acts.

The last objection raised by counsel for the appellant, in the event that the exceptions to the capacity were overruled, and as a consequence an order of sale was issued, is the *plus petitio,* which could also be pleaded in execution proceedings in accordance with section 1464 of the former Law of Procedure, on the ground that the mortgage constituted in the deed having been limited to securing the payment of interest for two years, which the creditor could recover to the prejudice of third persons, amounting in all to the sum of 3,060 Mexican *pesos,* equivalent to $1,744.20, American gold, the execution creditor was entitled to recover this sum only as interest, and not all the interest accruing between the year 1895 until final payment of the principal, as ordered by the judgment, or at the utmost, the interest corresponding to the five preceding years, for the reason that interest for the prior years must be considered to have prescribed in accordance with section 1867 of the new Civil Code, according to which actions for the recovery of payments which should have been made annually or in shorter periods, prescribed, among other actions, in five years.

But these allegations of counsel for the appellants are not admissible either.

Amalia Altuna has a perfect right to recover from the debtor's estate all interest accruing since August 31, 1895, when the last payment was made, to the day when the principal is paid, at the rate agreed on of 9 per cent per annum, as required by the judgment. It is true that, according to article 114 of the Mortgage Law in force in this Island, there may be collected, to the prejudice of third persons, interest only for the two preceding years and such part as may be due for the current year; but this is understood, as stated in the article, to the prejudice of third persons—that is to say, to the prejudice of any person subsequently obtaining some property right in the thing mortgaged—hence, if there be no

third person who can be prejudiced? The creditor may collect all interest due and not paid, as provided by article 147 of said Mortgage Law, to the effect that "a mortgagee may proceed against the property mortgaged for the payment of the interest due, no matter at what period the principal is to be paid; but if a third person, whom the proceedings could injure, is interested in said property, the sum demanded cannot exceed that due and not paid for the interest for the two years last past and the part due for the current year".

Amalia Altuna was therefore right in requesting, and the judge has not committed error in allowing her petition, that she be paid all the interest due to the date of the complaint, and interest accruing thereafter until the principal debt shall have been paid in full, at the rate of 9 per cent per annum agreed on, as there is no third person who has subsequently acquired any right in the property mortgaged who can be prejudiced.

With regard to the prescription of the interest exceeding the last five years, the appellants cannot successfully allege that either; because apart from the fact that the prescription referred to in section 1867 of the new Civil Code applies only to certain personal actions and in no way to those growing out of a mortgage contract, which, according to section 1865 of the said Code prescribes after 20 years, which period must be understood, not only for the recovery of the principal debt, but also for the recovery of interest, which is also collected under the same real mortgage action, it has also been proved in the proceedings that Amalia Altuna made a number of demands upon the debtor estate for the payment of the interest accruing since 1895, and consequently prescription, if applicable to this case, was interrupted in accordance with section 1874 of said Civil Code, according to which "prescription of actions is interrupted by their institution before the courts, by extra-judicial claim of the creditor, and by any act of acknowledgment of the debt of the debtor".

In view of all these circumstances we believe that the trial

court has not committed any error in the judgment, and consequently that it should be affirmed, with the costs against the appellants.

*Affirmed.*

Justices Hernández, Figueras and Wolf concurred. Justice MacLeary dissented.